323 So.2d 738

**John WASHINGTON**

**v.**

**STATE.**

**2 Div. 153.**

Court of Criminal Appeals of Alabama.

Dec. 16, 1975.

Thomas H. Boggs, Jr., Demopolis, for appellant.

William J. Baxley, Atty. Gen., and Ellis D. Hanan, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Washington was convicted of murder in the first degree and sentenced to life imprisonment. He was represented at arraignment and trial by court appointed counsel. He pleaded not guilty and not guilty by reason of insanity. After sentence he gave notice of appeal and was furnished a free transcript and trial counsel was appointed to represent him on appeal.

Some time around midnight, or shortly thereafter, on February 24, 1974, appellant went on a shooting spree and killed three people and shot and wounded three other people. He then drove to the VA Hospital in Tuscaloosa, Alabama, where he gave someone a rifle and stated he had shot six people.

The Sheriff of Greene County, Thomas A. Gilmore, testified that he was notified by telephone from the Boligee Police about the shootings and he and his Deputy went to the scene of the shootings where three people were killed at the home of Joe James and Mary Virginia James. There he saw three dead people including Charlie James for whose death appellant was prosecuted in this case. He stated he found Charlie James inside the north bedroom and felt his pulse and thought he was dead. He said he observed a small hole in the neck of the deceased and in his opinion it was a gunshot wound. The Sheriff had two photographs made of the body of the deceased and the room in which the body was found. These photographs were offered in evidence. Counsel for appellant did not object to one of the photographs but objected to the second photograph on the ground that it was a close-up picture showing blood on the floor near the bed where the deceased was lying on the ground and that it would unduly inflame the jury. Over this objection the photograph was admitted in evidence.

The Sheriff further testified that he interviewed Mary Virginia James who told him she saw appellant shoot the deceased who was her son, and that he shot him in the neck with a rifle.

After completing the investigation of the six shootings the Sheriff received information from the Veterans Hospital in Tuscaloosa that appellant was being held there and that someone should come and pick him up. The Sheriff and his Chief Deputy went to Tuscaloosa on the late afternoon of the same day of the shootings. Before leaving for Tuscaloosa the Sheriff obtained a warrant of arrest for appellant charging him with murder. When they arrived at the Veterans Hospital in Tuscaloosa, appellant was surrendered to the custody of the Sheriff along with a .22 rifle, shells and a large sum of money.

According to the Sheriff appellant rode in the car with him. He said he knew ap-

pellant and appellant knew him; that he told appellant that he was charged with murder and gave him the *Miranda* rights and warnings and that appellant said he understood his rights. After his rights were explained to him, appellant told the Sheriff he had shot six people and gave the Sheriff the names of the six people.

The Sheriff never did ask appellant if the rifle he had in his possession was the gun he used to kill three people and shoot three others. It would have been a very simple thing to have had appellant identify the murder weapon but this was never done. The rifle was offered in evidence over the objections of appellant's counsel that it had not been identified as the murder weapon but the trial court admitted the rifle in evidence *just as a weapon*. Appellant subsequently moved to exclude the rifle but the motion was overruled. .

 The only evidence even tending to show the rifle was used by appellant at the time of the shootings was the statement by the Sheriff that *someone in authority* at the Veterans Hospital *told* the Sheriff that appellant brought a rifle with him and said he had shot six people. The testimony of the Sheriff was hearsay evidence, pure and simple. We believe the trial court fell into error in permitting the rifle to be admitted in evidence and the case should be reversed and remanded for a new trial. *Amerson v. State,* 43 Ala.App. 148, 182 So.2d 901.

The person *in authority* at the Veterans Hospital in Tuscaloosa to whom appellant allegedly gave the rifle should have been called by the state to identify the rifle, since it was not otherwise identified.

 Appellant called three psychologists to testify in support of his insanity plea. The testimony of these three doctors is more confusing than enlightening. It will serve no useful purpose to detail the testimony of these psychologists. Suffice it to say that their testimony failed to meet the test of insanity laid down in the celebrated case of *Parsons v. State,* 81 Ala. 577, 2 So. 854.

Appellant's counsel contends that numerous other errors were committed in the trial of this case but in the light of our holding we will not respond to these contentions.

For the error above noted this case is reversed and remanded for a new trial.

Reversed and remanded.

All the judges concur.

CATES, P. J., concurs with opinion.

CATES, Presiding Judge (concurring):

In view of the need for a new trial I consider the trial judge should again follow *Pate v. Robinson,* 383 U.S. 375, 86 S. Ct. 836, 15 L.Ed.2d 815, to make sure that appellant is *then* competent to stand trial. See *Pierce v. State,* 52 Ala.App. 422, 293 So.2d 483.